IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**JEAN A. TEREK,**                  Case No. 3:14 CV 1391

        Plaintiff,         MEMORANDUM OPINION AND ORDER
                                                  ON DEFENDANTS' MOTION FOR
        v.                                    PARTIAL SUMMARY JUDGMENT

**WINFIELD J. FINKBINER, et al.,**       MAGISTRATE JUDGE JAMES R. KNEPP II

        Defendants.

## INTRODUCTION

Defendants Winfield Finkbiner ("Finkbiner") and Trans-United, Inc. ("Trans-United") jointly filed a partial motion for summary judgment on Counts 9, 25, and 26 of Plaintiff Jean Terek's ("Plaintiff") complaint. (Doc. 52). Plaintiff opposed the motion (Doc. 62) and the Defendants replied (Doc. 72). In Count 9, Plaintiff alleges Trans-United was negligent in its decision to hire Finkbiner as a semi-truck driver. Count 25 alleges a claim for punitive damages resulting from Trans-United's decision to hire Finkbiner, and Count 26 alleges a claim for punitive damages against Finkbiner resulting from his conduct on the date of the accident which injured Plaintiff.

The Court has jurisdiction under 28 U.S.C. § 1332. Because this case is brought under the Court's diversity jurisdiction, "state law governs the substantive issues and federal law governs the procedural issues, including evidentiary rulings made pursuant to the Federal Rules of Evidence." *V & M Star Steel v. Centimark Corp.,* 678 F.3d 459, 465 (6th Cir. 2012) (citing *Gass v. Marriott Hotel Servs., Inc.,* 558 F.3d 419, 425–26 (6th Cir. 2009)). The parties have consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 50). For the following reasons, Defendants' motion is granted..

**FACTUAL BACKGROUND**

On August 2, 2012, Plaintiff was a passenger in a car traveling west on I-80 in the far right lane. (Terek Dep. at 24; Salem Dep. at 30-31). On that same day, Finkbiner was operating a tractor-trailer for Trans-United and was also heading westbound on I-80 but in the center lane. (Finkbiner Dep. at 8, 23). Finkbiner initiated a lane change into the right lane and struck Plaintiff's vehicle on the front driver's side. (Witt Dep. at 11, 34). Finkbiner testified he did not see the Plaintiff's car before changing lanes. (Finkbiner Dep. at 10). Plaintiff's car was dragged by Finkbiner's trailer for a short period of time and upon release struck a guardrail. (Salem Dep. at 31; Witt Dep. at 12). As a result of this accident, Plaintiff suffered injuries. (Doc. 62, Ex. 7).

Rose Witt, a witness driving in a car behind both Finkbiner and Plaintiff, observed Finkbiner lose control of the tractor-trailer and nearly jack-knife after colliding with Plaintiff. (Witt Dep. at 12). She testified that Finkbiner slowed briefly but did not stop and instead continued on the highway. (Witt Dep. at 15-16). She further testified that she followed Finkbiner's truck because she believed he was trying to flee the accident scene. (Witt Dep. at 16-17). According to Witt, Finkbiner accelerated to a speed of at least 85 mph for more than five miles and then abruptly braked and reduced his speed to around 40 mph to exit the turnpike. (Witt Dep. at 20-21).

Finkbiner was stopped at the toll booth by the police and according to his testimony, first learned of the accident. (Finkbiner Dep. at 22-23). Finkbiner believed the difficulty steering he had had was the result of a "chuckhole". (Boo Dep. at 14). Finkbiner was cited for failure to drive in marked lanes and for fleeing the scene of an injury accident. (Doc. 62, Ex. 9).

After finishing with the police, Finkbiner contacted his employer and submitted to a post-accident drug and alcohol test, which he passed. (Boo Dep. at 14-15; Finkbiner Dep. at 34). The

2

next day Finkbiner delivered his load to Trans-United, where he discussed the accident with Tom Boo, the safety director, and provided a written statement. (Boo Dep. at 16). Boo photographed the tractor and the trailer. (Boo Dep. at 16).

Finkbiner was hired by Trans-United earlier in 2012; at the time of hire, Trans-United performed a background check, a motor vehicle report ("MVR") check – a summary of a driver's past citations or accidents, contacted prior employers, completed load securement, permit, escort, and other written testing, completed a pre-employment drug screen, and had Finkbiner watch safety videos and discuss safety protocols. (Boo Dep. at 9-12). Finkbiner testified at the time of the accident he had no restrictions on his license, he had never had his CDL suspended, and had never had any accidents in a semi-truck. (Finkbiner Dep. at 35).

Trans-United's policy is to only review the prior three years of an applicant's MVR, (Boo Dep. at 13) despite having knowledge of an applicant's entire MVR (Boo Dep. at 13). Finkbiner's MVR dates back to 1987, when he began his commercial driving career, and included over twenty entries. (Doc. 62, Ex. 1).

## STANDARD OF REVIEW

Pursuant to Federal Civil Rule 56(a), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id.* When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the non-moving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248–49 (1986). This burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Defendants seek summary judgment on Plaintiff's claims brought under Ohio law. In reviewing a claim under Ohio law, this Court must interpret Ohio law consistent with the interpretations of the Supreme Court of Ohio. *Northland Ins. Co. v. Guardsman Prods. Inc .,* 141 F.3d 612, 617 (6th Cir. 1998). Specifically, this Court must apply the substantive law of Ohio "'in accordance with the then-controlling decision of the highest court of the State.'" *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001) (quoting *Pedigo v. UNUM Life Ins. Co.,* 145 F.3d 804, 808 (6th Cir. 1998). Also, to the extent that the highest court in Ohio has not addressed the issue presented, this Court must anticipate how Ohio's highest court would rule. *Id.* (quoting *Bailey Farms, Inc. v. NOR—AM Chem. Co.,* 27 F.3d 188, 191 (6th Cir. 1994)).

## ANALYSIS

Defendants raised three grounds for partial summary judgment: (1) Plaintiff cannot prove the legal requirements of a negligent hiring claim; (2) there is no evidence Finkbiner acted maliciously at any point and, thus, a claim for punitive damages cannot be supported; and (3) there is no evidence that Trans-United authorized Finkbiner's conduct either on the day of, or after the accident thus, punitive damages are not available. The Court will first discuss the arguments as to punitive damages and then proceed into a discussion of the claim for negligent hiring.

**Punitive Damages Against Finkbiner**

Under Ohio law, punitive damages may be awarded in tort claims only upon a finding of actual malice, fraud, or insult on the part of the defendant. R.C. § 2315.21; *see Estate of Beavers v. Knapp*, 175 Ohio App.3d 758 (2008). For punitive damages to be appropriate, "something more than mere negligence is always required." *Id.* at 335. Substantial harm must be a near certain consequence of the defendant's actions. *See Motorists Mut. Inc. Co. v. Said*, 63 Ohio St. 3d 690 (1992). "Any less callous mental state is insufficient to incur that level of societal outrage necessary to justify an award of punitive damages. Therefore, it is evident that a reckless actor, who only has knowledge of the mere possibility that his or her actions may result in substantial harm, is not behaving maliciously." *Kuebler v. Gemini Transp.*, 2013 WL 6410608, *5 (S.D. Ohio) (quoting *Motorists Mut. Inc.,* 63 Ohio St. 3d 690).

Because R.C. § 2315.21 does not define malice, the Supreme Court of Ohio applies the definition of actual malice set forth in *Preston v. Murty,* 32 Ohio St.3d 334 (1987), to punitive-damage claims. *Malone v. Courtyard by Marriott Ltd. Partnership*, 74 Ohio St.3d 440 (1996). Thus, for purposes of punitive damages, malice is "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston*, 32 Ohio St.3d at 334. A party seeking punitive damages bears the burden of proving malice with clear and convincing evidence. R.C. § 2315.21(D)(1)(4).

Plaintiff's claims for punitive damages rest on the second definition, a "conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." Thus, the Court must determine if reasonable jurors could differ as to whether

5

Finkbiner knew his conduct, i.e. his manner of driving and actions afterward, had a great probability of causing substantial harm and whether he consciously disregarded that probability.

Defendants assert there is no evidence that Finkbiner was speeding, driving erratically, distracted, or driving under the influence of drugs or alcohol at the time of the accident. (Doc. 53, at 18). This assertion is uncontested. Rather, Plaintiff alleges it is Finkbiner's post-accident conduct, i.e. his decision to leave the scene of the accident, which shows a conscious disregard for Plaintiff. (Doc. 62, at 14). And although, Finkbiner asserts he was unaware he had hit Plaintiff's car, he did admit he felt something which affected his ability to control the truck. (Finkbiner Dep. at 22). Thus, it is possible for a jury to infer Finkbiner decided not to stop after the accident. It is from this inference that the Plaintiff asks the Court to allow the jury to infer malice. (Doc. 62, at 14-15).

In order for Plaintiff to prove malice, evidence must go to Finkbiner's state of mind prior to the accident. As already stated, there is no indication of malice prior to the accident. "The only evidence plaintiff has is a string of evidence from which one could possibly conclude that [defendant] knowingly fled the scene after the accident. Standing alone, this is insufficient." *Kuebler v. Gemini Transp.*, 2013 WL 6410608, at *6 (S.D. Ohio). In *Kuebler*, the court found in the presence of other aggravating factors "defendant's flight would be momentous [but] standing alone, it is nothing." *Id.* As here, the only evidence Plaintiff asserts as evidence of malice is Finkbiner's alleged flight from the scene of the accident. On its own, this is inadequate to support a finding of punitive damages. Thus, Defendants' motion for partial summary judgment on Plaintiff's claim for punitive damages resulting from Finkbiner's actions on the day of the accident is granted.

**Punitive Damages Against Trans-United, Inc.**

Punitive damages can be awarded against an employer in a tort action where either the employer's action demonstrated malice or fraud, or the employer authorized, participated in, or ratified malicious actions by its employees. R.C. § 2315.21(C)(1). Defendants requested summary judgment on Plaintiff's punitive damages claim against Trans-United because it did not authorize, participate in, or ratify Finkbiner's actions. (Doc. 53, at 14-16).

In opposition, Plaintiff argues authorization, participation, or ratification is not required when an employee acts within the scope of his employment. (Doc. 62, at 16); *See Fulwiler v. Schneider*, 104 Ohio App.3d 398, 406 (1995). Instead she asserts, if an employee acts within the scope of his employment, the employer implicitly authorizes the action and thus, respondeat superior liability applies. (Doc. 62, at 16-18). However, the Plaintiff misconstrues the finding in *Fulwiler*. It does not stand for the proposition that a Plaintiff need not prove authorization, participation, or ratification; but rather that a plaintiff need not prove both scope and ratification because an employee could be acting outside the scope of their employment and the employer could authorize, participate, or ratify the actions. *See Estate of Beavers v. Knapp*, 175 Ohio App.3d, 758, 774-83 (2008) (discussing Ohio precedent on the topic of punitive damages for employers); *Boyd v. Smith*, 2014 WL 1050080, at *9-10 (S.D. Ohio). Ohio law requires authorization, participation, or ratification by an employer and not just actionable conduct undertaken while in the scope of employment before an award of punitive damages against the employer can be contemplated. *Id.*

That being so, Plaintiff failed to argue or present any evidence that Trans-United authorized, participated, or ratified Finkbiner's actions after the accident, which, in any event,

7

the Court has already determined did not rise to the level of malice. The record shows after learning of the accident from Finkbiner, Trans-United ordered him to complete post-accident drug and alcohol testing, ordered Finkbiner to complete a written statement, and photographed the tractor and trailer the day after the accident. (Boo Dep. at 15-18). There is no evidence Trans-United acted in any way contrary to Plaintiff's interests or the law in its handling of the accident. The only evidence Trans-United may have ratified Finkbiner's action was that it did not terminate him after the accident, but rather allowed him to voluntary resign. (Finkbiner Dep. at 19); *Fulwiler*, 104 Ohio App.3d at 407 (citing *Saberton v. Greenwald*, 146 Ohio St. 414, 430-31 (1946) ("the fact that the master discharged the servant on learning of his act may show his disapproval of the servant's conduct and relieve him from liability for exemplary damages."); *but see Fisher v. Hering*, 88 Ohio App. 107, 112 (1948) (finding the continued employment of an individual who committed a tort is not, in and of itself, enough to show ratification by an employer).

While slight acts of ratification are sufficient to support claims for punitive damages, "ratification is to be inferred only from acts which evince an intention to ratify, and not from acts which may be readily and satisfactorily explained without involving intention to ratify." *Saberton*, 146 Ohio St. at 430. Here, there is scant evidence that Trans-United ratified Finkbiner's acts and even if its decision to allow voluntary resignation was considered such that decision may be readily and satisfactorily explained by other legitimate reasons besides ratification. Thus, Trans-United is entitled to judgment as a matter of law with regard to punitive damages resulting from the accident because no reasonable juror could find Trans-United authorized, participated in, or ratified Finkbiner's post-accident conduct.

**Negligent Hiring**

In Ohio, negligent hiring, supervision, and retention are separate and distinct torts from other theories of recovery such as respondeat superior; and an employer can be held independently liable for negligently hiring, supervising, or retaining an employee. *Simpkins v. Grace Brethren Church of Delaware*, 16 N.E.3d 687, 702 (Ohio App. 2014). As a separate cause of action it can produce a distinct injury, but only if Plaintiff can prove a separate injury apart from the underlying tort. *Safeco Ins. Co. of Am. v. White*, 122 Ohio St.3d 562, 572 (2009).

The elements of a claim of negligent hiring, supervision, training, or retention under Ohio law are:

1. the existence of an employment relationship;
2. the employee's incompetence;
3. the employer's actual or constructive knowledge of such incompetence;
4. the employee's act causing the plaintiff's injuries; and
5. the employer's negligence in hiring, supervising, training, and/or retaining the employee as the proximate cause of the plaintiff's injuries.

*Ruta v. Breckingridge-Remy Co.*, 69 Ohio St.2d 66, 69 (1982); *Zanni v. Stelzer*, 174 Ohio App.3d 84, 86-87 (2007).

The primary issue in a negligent hiring case is whether the employer knew or should have known of the employee's criminal or tortious propensities. *Byrd v. Faber*, 57 Ohio St.3d 56, 62 (1991). Then knowing of these propensities, would a reasonably prudent person foresee the employee's misconduct, *Evans v. Ohio State Univ.*, 112 Ohio App.3d 724, 740–43 (1996), such that it should have prevented the employment relationship. *Stephens v. A-Able Rents Co.,* 101 Ohio App.3d 20, 26 (1995). When determining the foreseeability of a criminal act, a court must look at the totality of the circumstances, and only when the circumstances are somewhat

9

overwhelming can an employer be held liable. *Prewitt v. Alexson Servs., Inc.,* 2008 WL 3893575, at *6 (Ohio App.) (citing *Evans*, 112 Ohio App.3d at 742).

In reviewing the evidence submitted by the parties in support of their positions, the Court finds no reasonable juror could conclude Trans-United is liable for negligent hiring. Prior to employing Finkbiner, Trans-United performed all the necessary background checks, tests, and inquiries one would expect of a prospective employer. *See Knapp*, 175 Ohio App.3d at 784 (finding no error in a jury's decision not to find negligent hiring even where employer failed to perform a background check). Trans-United ran a background check, an MVR, contacted prior employers, submitted Finkbiner to numerous written and practical tests, made him watch safety videos, and subjected him to a drug test. (Boo Dep. 8-13). Furthermore, Finkbiner had been a licensed commercial driver since 1987 and had never been in an accident or had his license restricted or suspended. (Finkbiner Dep. at 35).

The only evidence that Trans-United was negligent arises from Plaintiff's claim that Trans-United ignored Finkbiner's past driving record, which included approximately twenty citations since 1987, and instead only reviewed the last three years. (Doc. 62 at 11-13);(Boo Dep. at 11-13). However, an employer's decision to review recent driving history alone does not prove negligence. *See Boyd v. Smith*, 2014 WL 1050080, at *5 (S.D. Ohio) (granting summary judgment on negligent hiring claim when background check showed no accidents, citations, or forfeitures in the past three years); *see also Ball v. Stark*, 2013 WL 209123, at *19 (Ohio App.) (finding summary judgment appropriate given defendant's more immediate clean driving record; remote incidents do not go to the foreseeability of conduct). Nor could Finkbiner's prior three years driving history indicate to a reasonably prudent person that he would be involved in an accident. In fact in the three years prior to his employment with Trans-United, Finkbiner had

only been cited twice, once for Traffic – Control Violation and once for Equipment Used Improperly. (Doc. 62, Ex. 1). Thus considering the above, the Court finds no genuine issue of material fact exists that could prove Trans-United was liable for negligently hiring Finkbiner. As such, summary judgment is appropriate.

Even if Plaintiff's negligent hiring claim survived summary judgment, it is moot. Normally, negligent hiring would provide a separate road to recovery for a plaintiff. But where the underlying negligent act has been admitted, the cause of action is moot because liability for the plaintiff's recoverable injury has already been accepted. Here, Plaintiff has asserted no evidence of separate injury besides that caused by the accident and Trans-United has already accepted liability, via *respondeat superior*, for the entirety of Plaintiff's proximately caused injuries. Therefore, there is no distinct injury upon which Plaintiff could recover separate compensatory damages.

Furthermore, even if the negligent hiring claim was allowed to proceed as a basis for punitive damages against Trans-United; the Court finds no reasonable juror could attribute actual malice to Trans-United's decision to hire Finkbiner. While negligent hiring may be the basis for punitive damages, *Columbus Ry. Power & Light Co. v. Harrison*, 109 Ohio St. 526 (1924), a mere finding of negligence is not sufficient; actual malice must be established. *Stephens v. A-Able Rents Co.,* 101 Ohio App.3d 20, 28 (1995).  Even under the more liberal definition of malice, i.e., a "conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm",  Plaintiff cannot satisfy her burden. *Preston*, 32 Ohio St. at 334.

To be awarded punitive damages Plaintiff must be able to prove by clear and convincing evidence that Trans-United's decision to hire Finkbiner was so "callous in its disregard for the

11

rights and safety of others that society deems it intolerable." *Calmes v. Goodyear Tire Rubber Co.,* 61 Ohio St.3d 470, 473 (1991). In this case, the evidence does not support such a finding. In 25 years of commercial driving, Finkbiner had never been involved in an accident in a truck and no reasonable juror could find that Trans-United's hiring of Finkbiner had a near-certain consequence of causing Plaintiff's injuries. Instead, the evidence demonstrates Trans-United acted with reasonable due care in investigating Finkbiner's past employment and driving record. *See Kuebler*, 2014 WL 6410608, at *7; *MacNeill*, 917 F.Supp.2d at 732 (cases finding punitive damages against employer's were not appropriate on claims of negligent hiring where experienced drivers' records were unremarkable). Accordingly, a finding of punitive damages could not be supported.

Therefore for the reasons stated above, Trans-United's motion for partial summary judgment on the negligent hiring claim is granted. No reasonable juror could conclude it was negligent to hire Finkbiner. Considering Trans-United has accepted liability for Finkbiner's conduct, a claim for negligent hiring is moot. And even if this is incorrect, there is no proof of separately recoverable compensable damages apart from the injury from the accident. Furthermore to the extent punitive damages could be recoverable under a theory of negligent hiring, the facts of this case indicate no reasonable juror could conclude Trans-United's decision to hire Finkbiner was characterized by actual malice. Thus, evidence of negligent hiring only serves to prejudice the Defendant and inflame the jury.

## CONCLUSION

For the reasons stated above and consistent with this Opinion and Order, Defendants' motion for partial summary judgment is granted.

IT IS SO ORDERED.

s/James R. Knepp, II<br>
United States Magistrate Judge